**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| THOMAS MORROW, ET AL., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 13-1032 |
| | : | |
| COUNTY OF MONTGOMERY, | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Defendant. | : | |

_____

Goldberg, J.                                                                            January 31, 2014

<u>**Memorandum Opinion**</u>

## I.        <u>INTRODUCTION</u>

Plaintiffs Thomas and Valerie Morrow, on behalf of themselves and similarly situated individuals, have sued Defendant Montgomery County, in connection with their employment at the Montgomery County Correctional Facility ("MCCF").  Plaintiffs allege claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 <u>et</u> <u>seq.</u> ("FLSA") (Count I), and the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101 <u>et</u> <u>seq.</u> ("PMWA") (Count II) for failure to pay correctional officers for work performed both before and after their scheduled shifts, and failure to pay an overtime premium for hours worked over 40 in a week.

Presently before us are Defendant's motion to dismiss Plaintiffs' PMWA claims and Plaintiffs' motion for conditional class certification under the FLSA, 29 U.S.C. § 216(b).  For the reasons set forth below, both Defendant's motion to dismiss and Plaintiffs' motion for conditional certification will be granted.

II.     **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Thomas Morrow has been employed as a correctional officer at MCCF since approximately June 2002.  Plaintiff Valerie Morrow was employed in the same capacity from approximately June 2008 until approximately August 2012.  Plaintiffs allege that throughout the time of their employment, they were generally paid for the scheduled length of their shifts as opposed to time actually worked.  (First Am. Compl. ¶¶ 10-11, 18.)

Plaintiffs state that they and other correctional officers performed work compensable under the FLSA both before and after their scheduled shifts.  They explain that correctional officers are required to report for roll call at the beginning of a shift.  Prior to reporting to roll call, correctional officers are required to retrieve various keys from their personal lockers, which open handcuffs, safety boxes located throughout the facility and correctional officers' mailboxes.  Correctional officers are further required to store any personal keys, such as house or car keys, in their lockers before entering the secure part of the facility.   Plaintiffs claim correctional officers were not paid for the approximately 5-10 minutes they spent on a daily basis retrieving the keys from the locker room and traveling to the roll call room.  (Id. at ¶¶ 21, 24.)

Plaintiffs further allege that correctional officers are generally required to remain at their posts at the end of their shift until their replacement completes roll call, travels to the post and performs mandatory "pass-down" procedures.  Thereafter, correctional officers are required to return the facility keys to their lockers and retrieve their personal keys.  Plaintiffs assert that this post-shift work takes up to 25 minutes per shift.  (Id. at ¶¶ 26-28.)

Finally, Plaintiffs allege that during the time of their employment, Defendants used a pay system under which employees occasionally worked more than 40 hours in a week without being paid an overtime premium for the hours over 40.  (Id. at ¶¶ 29-33.)

Plaintiffs filed their First Amended Complaint on May 17, 2013.  On June 3, 2013, Defendant filed its Motion to Dismiss Count II.  Plaintiffs filed their Motion for Conditional Certification on June 5, 2013, seeking conditional certification only on the pre- and post-shift work claims.  Since the complaint was filed, several dozen additional Plaintiffs have opted in. The motions are now fully briefed and will be addressed in turn.

## III.   MOTION TO DISMISS

Defendant moves to dismiss Count II under Federal Rule of Civil Procedure 12(b)(6).

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for failure to state a claim upon which relief can be granted.  When ruling on a Rule 12(b)(6) motion, the court must accept the facts pled in the complaint as true and construe them in the light most favorable to the plaintiff.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  To survive dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility requires more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions.  Twombly, 550 U.S. at 555.

### B.  Discussion

Defendant argues that political subdivisions such as Montgomery County are not employers and therefore are not subject to suit under the PMWA.  The PMWA's definition of "employer" "'includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103.  Although the PMWA's definition does not expressly

include political subdivisions, Plaintiffs argue that Pennsylvania's Statutory Construction Act, 1 Pa.C.S.A. § 1991, which supplies definitions for Pennsylvania statutes generally, requires us to read "person" in the PMWA's definition to include political subdivisions. The Construction Act's definition of "person" "includes a corporation, partnership, limited liability company, business trust, other association, government entity (other than the commonwealth), estate, trust, foundation or natural person." 1 Pa.C.S.A. § 1991.

The Construction Act's definitions apply to any Pennsylvania statute enacted after September 1, 1937, unless the statute's context clearly indicates otherwise. Id. We agree with Defendant that in this instance, the PMWA's context indicates that the Construction Act's definition of "person" does not apply. In its definition of "employer," the PMWA expressly lists several kinds of entities also found in the Construction Act's definition of "person," including partnerships, corporations, and associations, but specifically excludes government entities. Had the legislature intended the PMWA's definition of "person" to include all of the entities encompassed by the Statutory Construction Act's definition, the express reference to some of those entities would have been unnecessary. This suggests that had the legislature intended to include government entities in the PMWA, it would have done so explicitly. At the very least, this statutory scheme contradicts Plaintiffs' contention that government entities are covered under the plain meaning of the PMWA.

While no court has directly ruled on the applicability of the PMWA to government entities, decisions on an analogous Pennsylvania statute, the Minimum Wage Payment and Collection Law, 43 P.S. § 260.1 et seq., make clear that where the legislature has omitted government entities from coverage in the language of the statute, courts should not read the statute to include these entities. See Phillipsburg-Oseceola Educ. Ass'n by Porter v.

Phillipsburg-Osceola Area School Dist., 633 A.2d 220, 223 (Pa. Cmwlth. 1993) (holding that school districts are not employers under Pennsylvania's Minimum Wage Payment and Collection Law); Huffman v. Borough of Millvale, 591 A.2d 1137, 1138-39 (Pa. Cmwlth. 1991) (holding that municipal corporations such as boroughs are not employers under the Minimum Wage Payment and Collection Law).   We conclude that the Pennsylvania Commonwealth Court's reasoning in these cases applies equally to the PMWA.[1]

In particular, we are persuaded by the Commonwealth Court's reasoning in Huffman:

[I]n construing the statute, we must give effect to the legislature's intent as it was expressed in the language of the statute and cannot supply an omission in a statute where it appears that the matter has been intentionally omitted.

Municipal corporations such as the Borough are not included within the definition of "employer," and we, as an appellate court, cannot expand the definition of employer to include them.   There is a clear distinction between municipal and private corporation and, if the legislature wished that municipal corporation be covered by the law, it could have easily included them.   Huffman, 139 Pa.Cmwlth. 349, 351-52 (1991) (footnote omitted) (citations omitted).

Accordingly, we find that political subdivisions are not employers under the PMWA, and will grant Defendant's motion to dismiss.

## IV.   MOTION FOR CONDITIONAL CERTIFICATION

Plaintiffs move for conditional certification under 29 U.S.C. § 216(b) of the following class:

correctional officers employed by Defendant during any workweek after [*insert date three years prior to the date of the Court's conditional*

---

[1] We note that Pennsylvania's Attorney General took the same position in an opinion directly addressing the applicability of the PMWA to employees of the Commonwealth, reasoning that the Pennsylvania Supreme Court has repeatedly held that a law cannot deprive the Commonwealth of any "prerogative, right or property" unless the Commonwealth is specifically named or its inclusion necessarily implied.   Applicability of Minimum Wage Act to Public Employes, 76 Op. Pa. Att'y General 29, 1 Pa. D. & C.3d 33, 41 (1976). The Attorney General concluded that "it would violate all discernable manifestations of legislative intent" to construe "employer" in the PMWA to include political subdivisions.  Id. at 44.

*certification order*] and assigned to the Montgomery County Correctional Facility.

Defendant responds that Plaintiffs have failed to show that the proposed class members are similarly situated and that granting conditional certification in the manner Plaintiffs propose will create procedural chaos.

### A. Legal Standard

Under the FLSA, employees may bring a collective action on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA does not define "similarly situated," the phrase contemplates individuals "employed under the same terms and conditions." Woodard v. FedEx Freight E., Inc., 250 F.R.D. 178, 190-91 (M.D. Pa. 2008) (citation omitted).

In deciding whether a suit brought under § 216(b) of the FLSA may move forward as a collective action, courts typically employ a two-tiered analysis. Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, 133 S. Ct. 1523 (2013). First, the plaintiff must show that proposed class members are similarly situated. If the plaintiff satisfies this burden, the court will conditionally certify the class, which allows for notice to proposed class members and discovery. Id. In order to satisfy the burden for conditional certification, the plaintiff must make a "modest factual showing" that the employees in the proposed class are similarly situated. This is a lenient standard, requiring the plaintiff to produce "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. at 192-93 (quoting Smith v. Sovereign Bancorp, Inc., 2003 WL 22701017, at *3 (E.D. Pa. November 13, 2003).

The second tier of the analysis occurs after discovery, at which time the court makes a conclusive determination as to whether each plaintiff who has opted into the class is similarly situated.  The burden on the plaintiff at this second stage is heavier.  Id. at 193.

**B. Discussion**

1. Changes to the Proposed Class

As an initial matter, we reject Defendant's argument that Plaintiffs' altering the proposed class definition between the time they filed their complaint and the instant motion creates a situation that is improper or unmanageable.  Plaintiffs' First Amended Complaint identifies similarly situated individuals as:

> [e]very individual (other than office staff) who, during any workweek after February 27, 2010, was employed by Defendant, paid on an hourly basis, and assigned to the Montgomery County Correctional Facility.

Defendants argue that the new proposed class covers a different time frame.  In response, Plaintiffs correctly point out that the statute of limitations for their PMWA claims proceeding under Federal Rule of Civil Procedure 23 is tolled as of the filing of their complaint, while the statute of limitations on the FLSA claims continues to run for putative plaintiffs until they opt in. See in re Linerboard Antitrust Litigation, 504 F. Supp.2d 38, 45 (E.D. Pa. 2007) (Rule 23 statute of limitations on individual claims is tolled upon filing of class action); Woodard v. Fedex Freight East, 250 F.R.D. 178, 193 (M.D. Pa. 2008) (FLSA claims are tolled when plaintiffs file written consent).  Because Plaintiffs filed this action as a hybrid containing both FLSA and state law claims, their complaint contains the longer statute of limitations governing their state law claims.  Now, in moving for conditional certification under the FLSA, Plaintiffs properly used the FLSA statute of limitations.

Plaintiffs also narrowed the proposed class to include only correctional officers, which is a specific rank of employee at MCCF.  Defendants argue this more narrowly defined class is impermissibly ambiguous, as evidenced by the fact that one of the 39 Plaintiffs who have opted in since the complaint was filed is actually a corporal and not a correctional officer.  Plaintiffs respond that the narrower proposed class is an attempt to clarify the class based on information obtained since the filing of the complaint, and that the corporal currently included can either withdraw or the class can be further refined to include him prior to final certification.  We agree that at this first stage, we need not determine whether each putative plaintiff is truly part of the class and that the class definition itself is sufficiently clear.

    2.  <u>Declarations and Paystubs</u>

In support of its conditional certification motion, Plaintiffs have submitted eight declarations from MCCF employees stating that they were generally required to perform unpaid work before and after their shifts, as well as Valerie and Thomas Morrow's paystubs, which they claim show prospective class members were generally compensated based on scheduled shift durations rather than actual time worked.  Defendant argues this evidence fails to establish the modest factual showing required for conditional certification.

Relying on <u>Postiglione v. Crossmark, Inc.</u>, 2012 WL 5829793 (E.D. Pa. Nov. 15, 2012), Defendant argues that boilerplate declarations such as the ones Plaintiffs offer are unreliable.  However, the <u>Postiglione</u> court had authorized limited discovery prior to ruling on conditional certification and found that the declarations of several prospective class members directly contradicted their deposition testimony.  Here, because no discovery has occurred, we have little basis for judging the declarants' veracity.

Defendant further argues that because the declarations state that "the County does not compensate correctional officers based on their actual work hours," whereas the complaint alleges that the County "generally does not compensate correctional officers based on their actual work hours," the declarations do not support the allegations in the complaint.   (Def.'s Resp. Ex. D; First Am. Compl. ¶ 18.)  Further, Defendants point out that the paystubs offered to show that correctional officers were paid according to the scheduled length of their shifts actually show numerous occasions on which Plaintiffs were paid overtime.

While Defendant raises legitimate questions as to whether members of the proposed class are truly similarly situated, they are more properly resolved at the next stage of these proceedings.  For the purpose of conditional certification and the facilitation of notice, we find that the declarations stating that correctional officers regularly engaged in pre- and post-shift activities, together with the paystubs showing they were generally paid in eight or twelve hour increments constitutes sufficient evidence of a policy of non-payment to warrant notice and discovery.  See Gallagher v. Lackawanna County, 2008 WL 9375549, at *8 (M.D. Pa. May 30, 2013) (finding boilerplate declarations that employees engaged in pre-shift work and were never compensated for it constituted the modest factual showing required for conditional certification); Harris v. Healthcare Services Group, 2007 WL 2221411 (E.D. Pa. July 31, 2007) (granting motion for conditional certification supported by affidavits stating that employees were not always paid an overtime rate for hours over 40 in a week).

3.  Individualized Inquiries

Defendant urges us to follow a number of courts that have declined to certify classes based on allegations of unpaid off-the-clock work similar to the allegations here.  Relying primarily on Basco v. Wal-Mart Stores, 2004 WL 1497709 (E.D. La. July 2, 2004), Defendant

argues that Plaintiffs' claims involve highly individualized inquiries that are not conducive to collective treatment.

The <u>Basco</u> plaintiffs proposed a class consisting of approximately 100,000 people who came "from different departments, groups, organizations, sub-organizations units and local offices…performed different jobs at different locations and were subject to different managerial requirements…"  <u>Basco</u>, 2004 WL 1497709, at *8.  As a result, and with the benefit of substantial discovery, that court found insufficient evidence of a homogenous policy, defenses that would require highly individualized evidence and enormous manageability problems. Defendant cites seven defenses listed in <u>Basco</u> requiring individualized evidence and weighing against conditional certification, arguing that each applies here.  While the <u>Basco</u> court used those factors in deciding a motion to issue notice, it recognized that they are generally applicable at the second stage of analysis, but because the parties had conducted significant discovery, the stages collapsed somewhat in that case.  <u>Id.</u> at *7 n.8.

Here, the proposed class consists of persons performing the same job at a single location, and the parties have conducted no discovery.  In a case involving similar claims of pre- and post-shift work in a single facility, a district court found that where Plaintiffs had demonstrated a policy of failure to pay for such work, "[a]ny variations, exceptions, or other factual dissimilarities are more appropriately evaluated in the second stage of class certification[.]" <u>Andrako v. United States Steel Corp.</u>, 2009 WL 2855662, at *5 (W.D. Pa. Sept. 2, 2009).[2] While the case before us will likely require some degree of individualized inquiry—Defendant has raised questions as to travel time to and from posts, post-shift practices and the approval of

---

[2] The motion for conditional certification in <u>Andrako</u> was supported by declarations describing the pre- and post-shift work performed, as well as a collective bargaining agreement stating that employees would not be paid for work outside of their scheduled shift.  While Plaintiffs have not presented evidence as strong as the written agreements in <u>Andrako</u>, as discussed <u>supra</u>, they have met the lenient standard for demonstrating they were subject to a common pay policy.

overtime—we adopt the <u>Andrako</u> court's approach and will allow the parties to develop a record on which these issues can be decided.

>4.   <u>Overtime Premium Claims</u>

Finally, Defendant argues that conditionally certifying the class as to the pre- and post-shift claims while temporarily setting aside the overtime premium claims would require separate notices for the two claims, creating confusion and chaos.  Plaintiffs respond that they will not file a second motion for conditional certification pertaining to the overtime premium claims, but will determine as the case moves forward whether the overtime premium claims can be asserted as to all members of the class.  Courts have held that FLSA opt-in plaintiffs can join the entire action, and are not required to renew consent for claims added by amendment after they have joined. <u>See, e.g.</u>, <u>Fengler v. Crouse Health System, Inc.</u>, 634 F.Supp.2d 257, 262 (N.D.N.Y.2009); <u>Prickett v. DeKalb Count</u>, 349 F.3d 1294, 1297 (11th Cir. 2003).  Plaintiffs are not required to file additional motions for certifications, nor does the possibility that Plaintiffs may pursue additional claims—either individually or collectively—create substantial confusion or chaos.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss and Plaintiffs' motion for conditional certification will be granted.  An appropriate order follows.